```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF INDIANA
                     HAMMOND DIVISION

DUSTIN D. DAMON,                    )
                                    )
     Plaintiff,                     )
                                    )
vs.                                 )   NO. 2:05-CV-60
                                    )
GRAND TRUNK WESTERN RAILROAD,       )
INC., a successor by                )
assignment to GRAND TRUNK           )
WESTERN RAILROAD COMPANY, a         )
corporation,                        )
                                    )
     Defendant.                     )
```

## OPINION AND ORDER

This matter is before the Court on: (1) Plaintiff's Motion for Summary Judgment, filed on January 13, 2006; and (2) Motion to Strike the Report of James Arton, filed by Defendant on February 22, 2006. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Motion to Strike the Report of James Arton is **DENIED AS MOOT**.[1]

BACKGROUND

Plaintiff, Dustin D. Damon, filed a complaint against Defendant, Grand Trunk Western Railroad Inc., a successor by assignment to Grand

---

[1] This motion sought to strike the report submitted in support of Plaintiff's Motion for Summary Judgment. Because this report was not considered in ruling on the motion for summary judgment, Defendant's motion to strike is unnecessary.

Trunk Western Railroad Co., ("Grand Trunk") to recover damages for injuries he sustained while working for Grand Trunk as a brakeman/conductor. Plaintiff brings his claim against Grand Trunk pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. section 45, *et seq.* Plaintiff claims Grand Trunk violated FELA in: Grand Trunk's alleged negligence, and Grand Trunk's alleged violations of the Federal Safety Appliance and Equipment Act, 49 U.S.C. section 20301, *et seq.*, and the Federal Railroad Administration's regulations found at 49 C.F.R. sections 232.103 and 232.15.

Plaintiff has moved for summary judgment on the issue of liability stemming from Grand Trunk's alleged violations of the Federal Railroad Administration's regulations.

DISCUSSION

Facts

The uncontested facts are as follows. Grand Trunk is a corporation doing business as a common carrier, engaged in interstate commerce by rail. (Compl. ¶ 3; Answer ¶ 3). On February 21, 2003, Plaintiff was employed by Grand Trunk as a brakeman/conductor. (Compl. ¶ 4; Answer ¶ 4). On that date, Plaintiff was assigned to work in Sedley, Indiana on railroad equipment owned and operated by Grand Trunk. (Compl. ¶ 5; Answer ¶ 5). At the direction of his supervisors, Plaintiff and his crew positioned a set of railroad cars involved in an earlier derailment onto an industrial side track.

(Compl. ¶ 6; Answer ¶ 6). Pursuant to Grand Trunk's orders, Plaintiff's crew positioned the railroad cars on the side track without operative couples, air brakes and/or handbrakes. (Compl. ¶ 7; Answer ¶ 7). After placing the railcars on the sidetrack, Plaintiff and his crew continued working on a Grand Truck train on the mainline track. (Compl. ¶ 8; Answer ¶ 8). While Plaintiff was working on the mainline, the railcars on the sidetrack began to roll from their position on the sidetrack and back onto the mainline track. (Compl. ¶ 9; Answer ¶ 9). A collision occurred between the railcars moving from the sidetrack to the mainline track and the train in which Plaintiff was working on. (Compl. ¶ 10; Answer ¶ 10). As a result of this collision, Plaintiff sustained personal injuries. (Compl. ¶ 11; Answer ¶ 11).

Summary Judgment Standard

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*,

-4-

840 F.2d  405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993).

The parties disagree as to the legal principles governing this motion. To be clear, Chief Judge Miller has previously had the opportunity to address the legal framework in ruling on a motion for summary judgment under FELA due to a defendant's alleged federal regulation violation. Judge Miller succinctly explained:

> The Federal Employers' Liability Act applies to "[e]very common carrier by railroad while engaging in commerce between any of the several States." 45 U.S.C. § 51.  It makes such railroad carriers liable for on-the-job injuries suffered by their employees "resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars . . . or other equipment." *Id*.  In an action brought under the FELA, "the violation of a statute or regulation . . . automatically constitutes breach of the employer's duty and negligence *per se* and will result in liability of the violation contributed in fact to the plaintiff's injury." *Walden v. Illinois Cent. Gulf R.R.*, 975 F.2d 361, 364 (7th Cir. 1992) (citing *Kernan v. Am. Dredging Co.*, 355 U.S. 426, 432-33 (1958)).  In other words, when a plaintiff bases his FELA claim on the defendant's alleged violation of a statute or regulation, [] liability attaches when the plaintiff proves (1) that the defendant committed the violation, and (2) that the violation caused the plaintiff's injury "in whole or in part." 45 U.S.C. § 51, *see also Walden v. Illinois Cent. Gulf R.R.*, 975 F.2d at 364.

*Schuelke v. Norfolk Southern Railway Co.*, Case No. 3:02-CV-594 (N.D. Ind. Dec. 16, 2003)(granting partial summary judgment in FELA case regarding liability based upon finding that a violation of C.F.R.

automatically constituted a breach of the railroad's duty).

Here, Plaintiff alleges Grand Trunk violated two regulations, 49 C.F.R. section 232.103 and section 232.15.  Plaintiff claims that Defendant violated section 232.103 by leaving the railroad cars unattended on the side track with inoperative brakes.  Plaintiff contends Defendant violated section 232.15 by placing two or more railroad cars with inoperative braking mechanisms in consecutive order on the side track.  Plaintiff argues that a violation of either of these regulations constitutes negligence per se on behalf of Defendant.  Each of these alleged violations will be addressed in turn.

## 49 C.F.R. § 232.103

49 C.F.R. section 232.103 governs train brake systems. Specifically, Plaintiff contends Defendant violated subsection (n), which concerns the securement of unattended equipment and provides:

> A train's air brake shall not be depended upon to hold equipment standing unattended on a grade (including a locomotive, a car, or a train whether or not locomotive is attached).  For purposes of this section, "unattended equipment" means equipment left standing and unmanned in such a manner that the brake system of the equipment cannot be readily controlled by a qualified person.  Unattended equipment shall be secured in accordance with the following requirements:
> (1) A sufficient number of hand brakes shall be applied to hold the equipment.  Railroads shall develop and implement a process or procedure to verify that the applied hand brakes

>          will sufficiently hold the equipment
>          with the air brakes released.

It is undisputed that Defendant's employees positioned the equipment on the side track without operative couplers, air brakes or handbrakes. (Answer ¶ 7). However, this does not end the inquiry. The text of subsection (n) sets forth that this subsection only applies to unattended equipment left on a grade. There is a question of fact as to whether the railroad cars were left unattended on a grade. On one hand, Donald Hicks testified that the railroad cars were left unattended on a level surface. (Hicks Dep. p. 25). As such, Hicks was unaware of how the railroad cars began to move. (Hicks Dep. p. 25-26). He speculated that the wind may have caused the railroad cars to move toward the train Plaintiff was working on. (Hicks Dep. p. 25-26). Plaintiff stated that the location where he was working on the main line and side tracks was situated on a grade. (Pl.'s Supp. Stmt. of Facts, Damon Aff., Ex. A). Plaintiff recently submitted a track chart as evidence that, in 2001, there was a grade at the Sedley, Indiana, intersection where the crash occurred.[2]

---

[2] On September 12, 2006, Plaintiff filed a motion requesting leave to file a second supplemental statement of facts. Attached to Plaintiff's motion for leave was a track chart of Sedley, Indiana, and Defendant's answers to requests for admission. Magistrate Judge Cherry granted this motion and ordered Plaintiff to file his second supplemental statement of facts on or before September 18, 2006. For some reason, Plaintiff has failed to do this. As such, the evidence and argument surrounding the track chart are not properly before the Court in ruling on the instant motion. Nevertheless, for the sake of argument, the Court has considered the evidence that Plaintiff was to present and, as evinced above, it is not enough to warranty summary judgment.

(Pl.'s Second Supp., Ex. A.)  However, this evidence does not resolve the question of whether the railroad cars were left unattended on a grade in February 2003.  To start, neither this chart nor any complementing evidence proves the grades that existed in 2001 remained unchanged in 2003.  Moreover, the location noted in the track chart having a grade is the site of the accident.  The site where the railroad cars were left unattended was not addressed.  Obviously, the location where the railroad cars were left unattended is different than the location of where the accident occurred.  As such, there exists a genuine issue of material fact as to whether Defendant left the railroad cars with inoperative brakes unattended on a grade. Consequently, summary judgment is inappropriate.

<u>49 C.F.R § 232.15</u>

Section 232.15 concerns the movement of defective equipment. Plaintiff argues that Defendant violated subsection (e)(2), which concerns the placement of railroad cars with inoperative brakes and provides:

> (e) Placement of equipment with inoperative brakes.
> \* \* \*
> (2)  No more than two freight cars with either inoperative brakes or not equipped with power brakes shall be consecutively placed in the same train.

Plaintiff contends that placing the railroad cars with

inoperative brakes in consecutive order onto the side track runs afoul of subsection (e). Defendant counters by arguing that this section does not apply here because the railroad cars were placed on the side track for repair after a derailment, they were not placed there to be in use. While Plaintiff claims that there is no "in use" language within section 232.15, the Court finds otherwise. Subsection (a), the general provision of section 232.15, states that "a railroad car or locomotive with one or more conditions not in compliance with this part may be used or hauled without civil penalty liability" if certain conditions are met. 49 C.F.R. § 232.15.

Subsection (a) clearly sets forth that Part 232, and thus section 232.15 contained within, is only implicated if the railroad cars in question are being used or hauled. Consequently, a plain reading of subsections (a) and (e), in conjunction, results in the unavoidable conclusion that the strictures regarding placement of equipment with inoperative brakes in consecutive order only applies to railroad cars in use or being hauled. Thus, section 232.15 has no punitive effect on the placement of railroad cars with inoperative brakes that are not in use.

When the facts surrounding the accident are set forth and undisputed, the determination of whether the railroad cars were in use at the time of the accident is a question of law for the court to decide. *Angell v. Chesapeake & Ohio Ry. Co.*, 618 F.2d 260, 262 (4th Cir. 1980); *Carder v. Ind. Harbor Belt R.R.*, 205 F. Supp. 2d 981, 984

(N.D. Ind. 2002). To determine whether the railroad cars were "in use," for purposes here, courts often look to interpretation of an identical "in use" requirement in statutes, such as the Federal Boiler Inspection Act, 49 U.S.C. § 20701, *et seq.*, or Federal Safety Appliance Act, 49 U.S.C. § 20301, *et seq*. *Underhill v. CSX Transp., Inc.*, 1:05-CV-196, 2006 WL 1128619 (April 24, 2006, N.D. Ind.). This "inquiry is challenging because precedent on the issue tends to be very fact-specific . . . and because there are generally no bright lines that demarcate when a train is in use and when it is not." *Paul v. Genesee & Wyoming Industries, Inc.*, 93 F. Supp. 2d 310, 316 (W.D.N.Y. 2000).

Nevertheless, Plaintiff contends that the Second Circuit's opinion in *Holfester v. Long Island R. Co.*, 360 F.2d 369 (2d Cir. 1966), is dispositive and establishes that a train taken off the mainline to an adjacent side-track is "in use." However, this reading of *Holfester* simplifies the Second Circuit's true holding. The court of appeals found the trial court's finding that the railroad car was in use was supported by sufficient evidence because: (1) the car was only temporarily taken off the mainline for a between-run inspection; (2) it was not removed to a repair or storage track but, rather, was placed on a train-assembly track adjacent to the mainline and left standing on a live track with its lights on; (3) its switchboard was operating and its motor generator and pumps were working; and (4) there was evidence that the mail on the railcar was not to be unloaded

at the mail dock until some time after the arrival of another mail car that evening.  *Id.* at 372.  Simply, the train had been pulled off the main line for a quick inspection.  As such, it is clear that the train in *Holfester* differed in many significant respects from the railroad cars here, which were taken off the main track indefinitely and detached from their engine, due to being damaged in a derailment. Thus, *Holfester* is not dispositive.

Plaintiff has not proffered enough evidence or relevant argument to allow the Court to find the railroad cars were in use.  Indeed, other than mentioning *Holfester* in a footnote, Plaintiff has failed to make any substantive argument or cite to any applicable legal authority that would deem the railroad cars at issue to be "in use" as a matter of law.  The Court will not do a party's legal research for it nor make a party's arguments for it.  See, e.g., Tyler v. Runyon, 70 F.3d 458, 465 (7th Cir. 1995)(recognizing that courts need not and indeed should not expend limited judicial resources in researching, refining, and otherwise fleshing out arguments that the parties themselves do not adequately support).  As such, the Court will not decide issues not adequately addressed by the parties.

Remember, it is the movant's burden to identify portions of pleadings, depositions, answers to interrogatories, admissions, and affidavits that the movant believes demonstrate an absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  As far as evidence goes, the only admissible, relevant evidence Plaintiff

provided was the pleadings- his complaint and Defendants' answer. While Defendant did attach an alleged copy of Donald Hicks' statement as Exhibit C, an copy of a statement made by an unidentified Grand Trunk official as Exhibit D, and a copy of Plaintiff's alleged personal injury report as Exhibit E, these documents were not properly authenticated and cannot be relied upon. *See, e.g., Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000)(noting that court may consider "properly authenticated and admissible documents or exhibits" in evaluating a motion for summary judgment). Moreover, the opinions of Plaintiff's expert, James Arton, do not address the "in use" issue. For its part, Defendants did little to clarify the pertinent facts and law. In their response brief, Defendants attached a declaration of one of its superintendents, who merely provided that the railroad cars were moved to a side track for temporary repairs. (Deft. Resp., Decl. Paul Warner ¶ 2, Ex. A). Moreover, Defendants did little to persuade the Court that the cars were not "in use."

Upon review of the record and arguments presented, the issue of whether the railroad cars at issue were "in use" is unclear. Simply, the facts and legal arguments presented are insufficient to allow this Court to find the railroad cars were "in use" as a matter of law. As such, the question as to whether section 232.15 is implicated must remain unanswered for now.

CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Motion to Strike the Report of James Arton is **DENIED AS MOOT.**

**DATED:  September 19, 2006**          /s/RUDY LOZANO, Judge
                                         **United States District Court**